THOMAS E. FRANKOVICH (State Bar No. 074414)
AMANDA LOCKHART (State Bar No. 289900)
THOMAS E. FRANKOVICH,
*A PROFESSIONAL LAW CORPORATION*
702 Mangrove Ave., #304
Chico, CA 95926
Telephone: (415) 389-8600
Email: tfrankovich@disabilitieslaw.com

Attorney for Plaintiff
BYRON CHAPMAN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BYRON CHAPMAN,<br><br>        Plaintiff,<br><br>v.<br><br>Jumping J Investments Inc., d.b.a. Cregor's Mini Mart; Marilyn E. S. Hansen;<br><br>        Defendants. | **CASE NO.**<br>**Civil Rights**<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES:**<br><br>**1st CAUSE OF ACTION:** For Denial of Access by a Public Accommodation in Violation of the Americans with Disabilities Act of 1990 (42 U.S.C. §12101, *et seq.*)<br><br>**2nd CAUSE OF ACTION:** For Denial of Full and Equal Access in Violation of California Civil Code §§54, 54.1 and 54.3<br><br>**3rd CAUSE OF ACTION:** For Denial of Access to Full and Equal Accommodations, Advantages, Facilities, Privileges and/or Services in Violation of California Civil Code §51, *et seq.* (The Unruh Civil Rights Act)<br><br>**DEMAND FOR JURY** |

1  Plaintiff  BYRON CHAPMAN, complains of defendants Marilyn E. S. Hansen; Jumping J

2  Investments Inc., d.b.a. Cregor's Mini Mart and alleges as follows:

3  **INTRODUCTION:**

4      1.      This is a civil rights action for discrimination against persons with physical

5  disabilities, of which class plaintiff  BYRON CHAPMAN and the disability community are

6  members, including but not limited to 4A4U,  for failure to remove architectural barriers

7  structural in nature at defendants' Cregor's Mini - Mart, a place of public accommodation,

8  thereby discriminatorily denying plaintiff and the class of other similarly situated persons with

9  physical disabilities access to, the full and equal enjoyment of, opportunity to participate in, and

10  benefit from, the goods, facilities, services, and accommodations thereof.  Plaintiff seeks

11  injunctive relief and damages pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C.

12  §12101, *et seq.*; California Civil Code §§51, 51.5 and 54, *et seq.*; and California Health & Safety

13  Code §19955, *et seq.*

14      2.      Plaintiff  brings this action acting as a "private attorney general" privatizing

15  enforcement of the American with Disabilities Act of 1990 ("ADA") without the American tax

16  payer(s) bearing the financial tax burden for such action.

17      3.      Plaintiff is a person with physical disabilities who, on or about September 1,

18  2016,  May, 24, 2017 and October 4, 2017 (and deterred thereafter), was an invitee, guest, patron,

19  customer at defendants' Cregor's Mini-Mart, in the City of  Paso Robles, California.  At said

20  time(s) and place, defendants failed to provide proper legal access to the Cregor's Mini-Mart,

21  which is a "public accommodation" and/or a "public facility" including, but not limited to

22  signage, parking, accessible route, entrance and dining.  The denial of access was in violation of

23  both federal and California legal requirements, and plaintiff suffered violation of his civil rights

24  to full and equal access, and was embarrassed and humiliated.

25  **JURISDICTION AND VENUE:**

26      4.      **Jurisdiction:**   This Court has jurisdiction of this action pursuant to 28 U.S.C.

27  §1331 for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq*.

28  Pursuant to pendant jurisdiction, attendant and related causes of action, arising from the same

1    nucleus of operative facts and arising out of the same transactions, are also brought under parallel

2    California law, whose goals are closely tied with the ADA, including but not limited to violations

3    of California Civil Code §51, *et seq.* and §54, *et seq.*, California Health & Safety Code §19955 *et*

4    *seq.*, including §19959; and California Building Code.

5         5.    **Venue:**   Venue is proper in this court pursuant to 28 U.S.C. §1391(b) and is

6    founded on the facts that the real property which is the subject of this action is located at/near

7    611 Spring Street, in the City of Paso Robles,  County of San Luis Obispo, State of California,

8    and that plaintiff's causes of action arose in this county.

9    **PARTIES:**

10        6.    Plaintiff  BYRON CHAPMAN is a "physically handicapped person," a

11   "physically disabled person," and a "person with physical disabilities" (hereinafter the terms

12   "physically disabled", "physically handicapped" and "person with physical disabilities" are used

13   interchangeably, as these words have similar or identical common usage and legal meaning, but

14   the legislative scheme in Part 5.5 of the Health & Safety Code uses the term "physically

15   handicapped persons" and the Unruh Civil Rights Act, §§51, 51.5, 54 and 54.1, and other

16   statutory measures refer to protection of the rights of  "physically disabled persons").  Plaintiff

17   BYRON CHAPMAN is a "person with physical disabilities", as defined by all applicable

18   California and United States laws.  Plaintiff  BYRON CHAPMAN has a spinal cord injury which

19   affects both lower extremities (i.e., right leg has no motor skills but heightened sensitivity and

20   left leg has approximately 15% to 20% motor skills and no sensitivity).  Plaintiff  BYRON

21   CHAPMAN relies primarily on a wheelchair to travel about in public.   Consequently, plaintiff

22   BYRON CHAPMAN is a member of that portion of the public whose rights are protected by the

23   provisions of Health & Safety Code §19955, *et seq.* (entitled "Access to Public Accommodations

24   by Physically Handicapped Persons") and the protections of the Unruh Civil Rights Act, Civil

25   Code §§51 and 51.5 the Disabled Persons Act, Civil Code §54, and the Americans with

26   Disabilities Act, 42 U.S.C. §12101, *et seq.*

27   ///

28   ///

7.   **DEFINITIONS:**

a.   **ADAAG** - The Americans with Disabilities Act Accessibility Guidelines of 1990; and 2010 ADA Standards

b.   **2010 ADA STANDARDS** - The revised regulations for Title II and III of the Americans with Disabilities Act of 1990 in the Federal Register as of September 15, 2010;

c.   **ARCHITECTURAL BARRIERS** - Architectural barriers are physical features that limit or prevent people with disabilities from obtaining the goods or services that are offered.  They can include but are not limited to the following examples:  parking spaces that are too narrow to accommodate people who use wheelchairs; a step or steps at the entrance or to part of the selling space of a store; round doorknobs or door hardware that is difficult to grasp; aisles that are too narrow for a person using a wheelchair; electric scooter, or a walker; a high counter or narrow checkout aisles at a cash register, and fixed tables in eating areas that are too low to accommodate a person using a wheelchair or that have fixed seats that prevent a person using a wheelchair from pulling under the table. Excerpted from the *"ADA Guide for Small Businesses"* with an interlineation modification. http://www.ada.gov/smbustxt.htm. (The descriptive use of the word "barriers" as used herein is synonymous with architectural barriers).

d.   **ELEMENTS -** An architectural or mechanical component of a building, facility, space, or site (e.g., telephone, curb ramp, door, flush valve, drinking fountain, seating, or water closet, toilet seat, dispensers) and/or placement or lack thereof.

e.   **CATEGORICAL ARCHITECTURAL BARRIERS -** Are elements and facilities which are, or can be architectural barriers standing alone or in combination with one another where the element(s)/facility(s) is/are

noncomplying or where the combination thereof creates a category. For example: such as a parking lot, entrance, restroom, lobby, guest room, dining area.

f.   **PHYSICAL FEATURES** - Are synonymous with "Elements."

g.   **FACILITY -** All or any portion of buildings, structures, site improvements, complexes, equipment, roads, walks, passageways, parking lots, or other real or personal property located on a site.

h.   **ENTRANCE -** Any access point to a building or portion of a building or facility used for the purpose of entering. An entrance includes the approach walk, the vertical access leading to the entrance platform, the entrance platform itself, vestibules if provided, the entry door(s) or gate(s), and the hardware of the entry door(s) or gate(s).

i.   **CLEAR FLOOR SPACE -** The minimum unobstructed floor or ground space required to accommodate a single, stationary wheelchair and occupant.

j.   **ACCESSIBLE ROUTE -** A continuous unobstructed path connecting all accessible elements and spaces of a building or facility. Interior accessible routes may include corridors, floors, ramps, elevators, lifts, and clear floor space at fixtures. Exterior accessible routes may include parking access aisles, curb ramps, crosswalks at vehicular ways, walks, ramps, and lifts.

k.   **PATH OF TRAVEL -** A continuous path connecting all elements and spaces of a building or facility.

l.   **NON COMPLYING -** Not complying with ADAAG and/or the "Readily Achievable Standard" of 28 CFR §36.304.

**PRELIMINARY FACTUAL ALLEGATIONS:**

8.    Plaintiff BYRON CHAPMAN is a "person with physical disabilities," as defined by all applicable California and United States laws. Plaintiff BYRON CHAPMAN has a spinal cord injury which affects both lower extremities (i.e., right leg has no motor skills but

heightened sensitivity and left leg has approximately 15% to 20% motor skills and no sensitivity).

9.      The Cregor's Mini-Mart, is a grocery store located at/near 611 Spring Street, Paso Robles, California.  The Cregor's Mini-Mart, its signage, parking, accessible route, entrance, dining**,** and its other facilities are each a "place of public accommodation or facility" subject to the barrier removal requirements of the Americans with Disabilities Act.  On information and belief, each such facility has, since July 1, 1970, undergone "alterations, structural repairs and additions," each of which has subjected the Cregor's Mini-Mart and each of its facilities, its signage, parking, accessible route, entrance, dining to disability access requirements per the Americans with Disabilities Act Accessibility Guidelines (ADAAG), and the California Building Code.

10.      Defendant  Marilyn E. S. Hansen is the owner of the real property (land and building) located at or near 611 Spring Street, Paso Robles, , California.

11.      Defendant Jumping J Investments Inc is the operator lessee of the public accommodation known as Cregor's Mini-Mart, located at/near 611 Spring Street, Paso Robles, California, or of the building and/or buildings which constitute said public accommodation.

12.      At all times relevant to this complaint, defendants Jumping J Investments Inc., d.b.a. Cregor's Mini - Mart; Marilyn E. S. Hansen, own and operate in joint venture the subject Cregor's Mini-Mart a public accommodation.  This business is open to the general public and conducts business therein.  The business is a "public accommodation" or "public facility" subject to the requirements of California Civil Code §§51, 51.5 and 54, *et seq.,* Health and Safety code §19955, *et seq.,* and the ADA, 42 U.S.C. §12101, *et seq.*

13.      On or about but before 1998, defendant Marilyn E. S. Hansen purchased and/or took possessory control of the premises now known as Cregor's Mini-Mart.  Thereafter an inter spousal transfer took place.  At all times prior thereto, defendant  Marilyn E. S. Hansen was aware of it's obligation , or upon taking possessory interest that public accommodations had a duty to identify and remove architectural barriers and were aware that Cregor's Mini-Mart was not accessible to the disabled.  Nevertheless, defendant Marilyn E. S. Hansen operated Cregor's

as though it was accessible.

14.    At all times relevant to this complaint, defendants Jumping J Investments Inc., d.b.a. Cregor's Mini - Mart; Marilyn E. S. Hansen are jointly and severally responsible to identify and remove architectural barriers at the subject Cregor's Mini - Mart pursuant to Code of Federal Regulations title 28, section 36.201(b), which states in pertinent part:

§ 36.201    General

(b)    *Landlord and tenant responsibilities.* Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are public accommodations subject to the requirements of this part. As between the parties, allocation of responsibility for complying with the obligations of this part may be determined by lease or other contract.
28 CFR §36.201(b)

15.    At all times stated herein, defendants' and each of them with the knowledge that each of them had a continuing obligation to identify and remove architectural barriers where it was readily achievable to do so, failed to adopt a transition plan to provide better and/or compliant access to the subject accommodation.

16.    At all times referred to herein and continuing to the present time, defendants, and each of them, advertised, publicized and held out the Cregor's Mini-Mart as being handicapped accessible and handicapped usable.

17.    On or about September 1, 2016,  May, 24, 2017 and October 4, 2017, plaintiff BYRON CHAPMAN was an invitee and guest at the subject Cregor's Mini-Mart, with his wife, Judi Chapman, for purposes of obtaining food and beverage.

18.    On or about September 1, 2016,  May, 24, 2017 and October 4, 2017, plaintiff BYRON CHAPMAN encountered the following architectural barriers in the parking lot of Cregor's Mini-Mart and as a legal result had the following adverse experiences: There was no compliant accessible parking. There was a disability parking stall sign but no van accessible parking serving it at the front parking area of Cregor's.  Further, the sign and the location of this "would be" disability parking stall was not closest to the entrance where other parking stalls

were located.  As a legal result plaintiff  BYRON CHAPMAN parked in a marked for Cregor's parking area which is located next to Boyd's.  Plaintiff was compelled to wheel across the parking lot putting himself at risk as he was in the vehicular path of travel.

19.     On or about September 1, 2016,  May, 24, 2017 and October 4, 2017, plaintiff BYRON CHAPMAN encountered the following architectural barriers at the ramp from the parking lot of Cregor's Mini-Mart and as a legal result had the following adverse experiences: there was no smooth transition from the concrete ramp to the asphalt pairing parking lot as you leave Cregor's Mini-Mart.  It is a one to two inch blunt rise creating a dangerous condition/as a legal result plaintiff BYRON CHAPMAN had to use extreme caution when wheeling back to his van from Cregor's Mini-Mart.

Mini-Mart

20.     On or about May, 24, 2017 and October 4, 2017, plaintiff  BYRON CHAPMAN encountered the following architectural barriers on the path of travel to the front entrance of Cregor's Mini-Mart and as a legal result had the following adverse experiences: the path of travel while 48" wide or more when unobstructed narrowed to less than 36" due to trash cans and vehicles which protrude around wheel blocks and therefor "nose" over the path of travel/as a legal result plaintiff  BYRON CHAPMAN had difficulty wheeling by.

21.     On or about September 1, 2016,  May, 24, 2017 and October 4, 2017, plaintiff BYRON CHAPMAN encountered the following architectural barriers at the entrance to Cregor's Mini-Mart and as a legal result had the following adverse experiences: the door pressure at the door was excessive/as a legal result it was difficult for plaintiff  BYRON CHAPMAN to open the door.

22.     On or about September 1, 2016,  May, 24, 2017 and October 4, 2017, plaintiff BYRON CHAPMAN encountered the following architectural barriers at the outside dining area of Cregor's Mini-Mart and as a legal result had the following adverse experiences: none of the outside tables were accessible to a wheel chair user/as a legal result on the September 1, 2016 visit plaintiff  BYRON CHAPMAN had to sit sideways to a table to enjoy his ice cream. This is difficult to do as one has to use caution not to spill the ice cream on his pants.

23.     On or about September 1, 2016, plaintiff BYRON CHAPMAN spoke with "Doug" at Cregor's Mini-Mart about access issues and wrote a note which he gave to "Doug" to give to the manager.  The note read:

> "I spoke to Doug and asked him to give this to the
> manager.  I was a patron at your business today.  Good selection
> of drinks and the ice cream was great, however I had difficulty
> parking in disability space and went to eat my ice cream at your
> tables out front but couldn't clear my legs and foot rests of my
> wheelchair at any of the tables.  The path of travel from the
> parking(disability) spaces to the access path of travel to the store
> entrance was very narrow when cars (vehicles) pulled up to the
> curb and I barely made it past the parked ones.  There is also a
> raised lip at the cement and asphalt (where they meet).  You
> might want to tell the landlord as well.
>
> Please write me back in a day or two and tell me what you
> will do to correct the items I have mentioned above and when
> the corrections will be complete (a date)".

Plaintiff Byron Chapman never received a response back.

24.     Michelle Daughtery's letter excluded 611 Spring Street, the location of Cregor's Mini-Mart.  It clearly states Cregor's Mini-Mart has nothing to do with the property she manages: Enterprise Plaza.  Plaintiff Byron Chapman found it strange that Daughtery replied rather than a rep of Cregor's Mini-Mart.

25.     On or about the years 2015 through 2017 plaintiff Byron Chapman also patronized Boyd's in the Enterprise Plaza.  Plaintiff Byron Chapman encountered architectural barriers.  Plaintiff Byron Chapman wrote to the land lord and tenant and received responses.  Ultimately the barriers were removed due to plaintiff Byron Chapman's notice letter. No legal action was initiated.

///

1  The history of the correspondence was:   On September 12, 2016 plaintiff  Byron Chapman wrote

2  the following letter to Michelle Daughtery's. It read:

3  　　　　　　　　　"Dear Michelle,

4  　　　　　　　　　　On September 1, 2016 I STOPPED AT Boyd's

5  　　　　　　　　　TOBACCO AND gifts.  Thanks for having access aisle for

6  　　　　　　　　　disability parking correct.

7  　　　　　　　　　　On my last visit I realized I realized that there are 3

8  　　　　　　　　　steps at the end of Boyd's which I can't use due to my

9  　　　　　　　　　wheelchair.

10  　　　　　　　　　　Please put in a ramp by the strip mall by Toby's to the

11  　　　　　　　　　Cregors Deli.

12  　　　　　　　　　　Please write me back as soon as you get this letting

13  　　　　　　　　　me know what you will do and when it will be accessible

14  　　　　　　　　　for wheelchair users like myself."  Attn: Byron Chapman

15  　　　　　　　　　　　　　　　　　2220 Mt. Errigal Ln

16  　　　　　　　　　　　　　　　　Lincoln, Ca   95648

17  　　　　　　　　Respectfully,

18  　　　　　　　　Byron Chapman

19  Plaintiff  Byron Chapman received a response letter dated October 26, 2016 from Michelle

20  Daugherty property owner of the property located at 625-641 Spring Street, Paso Robles.

21  Michelle Daugherty wrote:

22  　　　　　　　　　"Dear Mr. Chapman,

23  　　　　　　　　　I received your letter dated September 12, 2016 recently in the mail

24  　　　　　　　　　recently.  I am glad you appreciate the proper access aisle and

25  　　　　　　　　　corrections made for disability parking on our property at 625-641

26  　　　　　　　　　Spring Street in Paso Robles, Ca.  In regards to your request,

27  　　　　　　　　　Cregors Deli is owned and operated by a separate individual and

28  　　　　　　　　　has nothing to do with our strip mall. This includes all handicap

spaces and the appropriate access aisle on the south side of Boys'
Tobacco owned  by Cregor's market. We have already provided a
primary accessible route with current handicap ramp and rails to
the front of our building known as the Enterprise Plaza where you
visit Boyd's Tobacco from your home in Lincoln, Ca.  I contacted
the Federal ADA Access board and have been told reasonable
primary access has already been provided and that the original
construction of the building which included those steps was built to
regulation and code.  At that time there was no language that
indicates all routes must be accessible. I also followed up with the
State of Ca who also informed me that we are in compliance and
are not required to build a secondary ramp.

Please feel free to contact me again if you have any questions".

26.    On or about December 6, 2017, and thereafter, plaintiff would have returned to
Cregor's Mini Mart but was deterred from returning for the fear that once he returned, he would
encounter all of the same architectural barriers as on the first visit and that not even the easiest
barrier(s) would have been removed such as the following: signage, parking, accessible route,
entrance and dining to make it easier to enjoy the goods, services and opportunities afforded by
this public -  accommodation.

27.    Therefore, at said time(s) and place, plaintiff  BYRON CHAPMAN,  encountered
the following architectural barriers as stated herein or lack thereof and/or "elements" and
"facilities" which constituted architectural barriers and/or categorical architectural barriers and a
denial of the proper and legally required access to a public accommodation to persons with
physical disabilities including, but not limited to:

          A.    lack of directional signage to show accessible routes of travel to the
entrance;

          B.    lack of the requisite type and number of disabled parking stall(s);

C. lack of disabled van accessible parking stall(s), stall next to Boyd's is non compliant due to location requiring wheelchair user to cross vehicular path of travel;

D. lack of (proper) disabled parking signage;

E. lack of tow-a-way signage;

F. No Fine $250 sign;

G. lack of an accessible entrance due to 9 lbs of door pressure;

H. lack of an accessible outside dining area; 5% compliance requirement;

I. lack of curb cuts where van accessible parking should be placed in front of Cregor's Mini Market;

J. lack of a ramp with a smooth transition from the concrete ramp which leads to the asphalt parking lot;;

K. lack of signage, policies, procedures and guidelines to ensure the person(s) with disabilities to the maximum extent possible have an opportunity to share in the same goods, services and opportunities as those afforded to able-bodied persons;

Therefore, as a legal result of encountering each of said elements, plaintiff experienced one, all, or a combination of the following difficulties: stress, strain, difficulty, and discomfort to his upper extremities in attempting to and/or using said elements also causing anxiety, disappointment, and embarrassment.

28. At all time(s) as stated herein, plaintiff encountered architectural barrier(s) as stated herein and/or had personal knowledge of said barrier(s) and knew it would be a futile gesture to attempt to overcome it/them because of his disability.

29. At all times stated herein, it was "readily achievable" for defendants to remove some and/or all of the architectural barriers complained of over a reasonable period of time from the date that defendants initially took possession to meet the affirmative duty to identify and remove architectural barriers where it is readily achievable to do so.  In that regard, defendants could have but did not avail themselves of the tax deduction and tax credits provided by  Internal Revenue Services ("IRS") codes 44 and 190, which apply to the costs of barrier removal.

///

///

30.     At all time(s) and place, each architectural element as stated herein that did not strictly comply with or substantially comply with the ADAAG minimum requirements constituted an architectural barrier which precluded plaintiff from full and equal opportunities afforded to non disabled persons to the goods and services of Cregor's Mini-Mart.

31.     Plaintiff was and is deterred from returning to Cregor's Mini-Mart so long as architectural barrier(s) complained of that hee encountered, as stated herein are not ADAAG compliant.

32.     At said time(s) and place, when plaintiff encountered the architectural barriers as stated herein, and/or in seeing a barrier(s) and/or attempting to overcome the barriers to gain access experienced any one or combination of physical difficulty, discomfort, embarrassment, stress, strain, fatigue, anger, annoyance and disappointment.  This arose from plaintiff's physical inability to effectively use his/her upper extremities to easily overcome the architectural barriers as stated herein. This constitutes a denial of full and equal access to the subject public accommodation and a denial of the opportunity to independently enjoy and participate in the opportunities, goods and services offered to non disabled persons and patrons, invitees and guests.

33.     Said architectural barrier(s) as stated herein deprived and deterred plaintiff the same full and equal access that a non wheelchair user/non disabled person would enjoy while engaging in the goods, service and opportunities offered at the subject Cregor's Mini-Mart.

34.     At all times stated herein, the existence of architectural barriers at defendants' place of public accommodation evidenced "actual notice" of defendants' intent not to comply with the Americans with Disabilities Act of 1990 either then, now or in the future.

35.     As a legal result of defendants' and each of their failure to act as a reasonable and prudent public accommodation in identifying, removing or creating architectural barriers, policies, practices and procedures that denied access to plaintiff  and other persons with disabilities, plaintiff suffered the damages as alleged herein.

36.     As a result of the denial of equal access to defendants' facilities due to the acts and omissions of defendants, and each of them, in owning, operating and maintaining these subject

public facilities, plaintiff BYRON CHAPMAN suffered violations of plaintiff's civil rights, including, but not limited to rights under Civil Code §§51, 52, 54, 54.1, and 54.3, *et seq*. And, plaintiff BYRON CHAPMAN suffered bodily injury at time(s) stated herein. And/or as a legal result of encountering architectural barriers experienced one or a combination of: difficulty discomfort and embarrassment.

37.     Further, plaintiff suffered emotional distress, mental distress, mental suffering, mental anguish, which includes, but is not limited to, shame, humiliation, embarrassment, upset, anger, frustration, disappointment and worry, expectedly and naturally associated with a person with physical disabilities encountering architectural barrier(s) as stated herein and being denied access, all to his damages as prayed hereinafter in an amount within the jurisdiction of this court. No claim is being made for mental and emotional distress over and above that is usually associated with the encountering of architectural barriers and legally resulting in adverse experiences. No expert testimony regarding this usual mental and emotional distress will be presented at trial in support of the claim for damages.

38.     Defendants', and each of their, failure to remove the architectural barriers complained of herein created, at the time of plaintiff's first visit to said public accommodation, and continues to create continuous and repeated exposure to substantially the same general harmful conditions which caused plaintiff harm as stated herein.

39.     Plaintiff BYRON CHAPMAN was denied his rights to equal access to a public facility by defendants Marilyn E. S. Hansen; Jumping J Investments Inc., d.b.a. Cregor's Mini Mart, because defendants Marilyn E. S. Hansen; Jumping J Investments Inc., d.b.a. Cregor's Mini Mart maintained a mini mart without access for persons with physical disabilities to its facilities, including but not limited to the signage, parking, accessible route, entrance and dining, and other public areas as stated herein, and continue to the date of filing this complaint to deny equal access to plaintiff and other persons with physical disabilities in these and other ways.

40.     Construction alterations, if any, carried out by defendants have also triggered access requirements under both California law and the Americans with Disabilities Act of 1990. ///

41.     Defendants may have intentionally undertaken to modify and alter existing building(s), and may have failed to make them comply with accessibility requirements under the requirements of ADAAG and California Building Code.

42.     Defendants have been negligent in their affirmative duty to identify the architectural barriers complained of herein and negligent in the removal of some or all of said barriers.

43.     Because of defendants' violations, plaintiff and other persons with physical disabilities are unable to use public facilities such as those owned and operated by defendants on a "full and equal" basis unless such facility is in compliance with the provisions of the Americans with Disabilities Act of 1990, Civil Code §51, Civil Code §54.1 and Health & Safety Code §19955, *et seq.* and other accessibility law as pled herein.  Plaintiff seeks an order from this court compelling defendants to make the Cregor's Mini-Mart accessible to persons with disabilities.

44.     Plaintiff, as described herein below, seeks injunctive relief to require the Cregor's Mini-Mart to be made accessible to meet the requirements of both California law and the Americans with Disabilities Act of 1990, whichever is more restrictive, so long as defendants operate the Mini-Mart as a public facility.

45.     Plaintiffs believes that even with service of the summons and complaint on defendants and each of them, that defendants will not , under their "continuing obligation" immediately undertake remedial action to identify and remove architectural barriers.

46.     Plaintiff seeks damages for violation of his civil rights on September 1, 2016, May, 24, 2017 and October 4, 2017 and deterrence occasion(s) and seeks statutory damages of not less than $4,000, pursuant to Civil Code §52(a), for each day after his visit that the trier of fact (court/jury) determines was the date that some or all remedial work should have been completed under the standard that the landlord and tenant had an ongoing duty to identify and remove architectural barriers where it was readily achievable to do so, which deterred plaintiff from returning to the subject public accommodation because of his knowledge and/or belief that neither some or all architectural barriers had been removed and that said premises remains inaccessible to persons with disabilities whether a wheelchair user or otherwise.  The acts and omission of

1  defendants, and each of them, in failing to provide the required accessible public facilities at the

2  time of plaintiff's visit and injuries, indicate actual and implied malice toward plaintiff, and

3  despicable conduct carried out by defendants, and each of them, with a willful and conscious

4  disregard for the rights and safety of plaintiff and other similarly situated persons, and justify a

5  trebling of damages as provided by Civil Code §§52(a) and 54.3, in order to make a more

6  profound example of defendants, and each of them, to other operators and landlords of other

7  Mini-Marts and other public facilities, and to punish defendants and to carry out the purposes of

8  the Civil Code §§ 51, 51.5 and 54.

9      47.    At all times stated herein and for post complaint occasions, plaintiff has an

10  absolute unfettered civil right to return to the public accommodation(s) complained of within

11  thirty (30) day intervals until defendants remove all architectural barriers under their continuing

12  obligation to identify and remove architectural barriers.

13      48.    Plaintiff is informed and believes and therefore alleges that defendants Jumping J

14  Investments Inc., d.b.a. Cregor's Mini Mart; Marilyn E. S. Hansen, and each of them, caused the

15  subject building(s) which constitute the Cregor's Mini Mart to be constructed, altered and

16  maintained in such a manner that persons with physical disabilities were denied full and equal

17  access to, within and throughout said building(s) of the Mini Mart and were denied full and equal

18  use of said public facilities.  Furthermore, on information and belief, defendants have continued to

19  maintain and operate said  Mini Mart and/or its building(s) in such conditions up to the present

20  time, despite actual and constructive notice to such defendants that the configuration of Cregor's

21  Mini Mart and/or its building(s) is in violation of the civil rights of persons with physical

22  disabilities, such as plaintiff and other members of the disability community.  Such construction,

23  modification, ownership, operation, maintenance and practices of such public facilities are in

24  violation of Civil Code §§51, 51.5 and 54, Health and Safety Code §19955, and the ADA, 42

25  U.S.C. §12101, *et seq.*

26      49.    Defendants' actual and constructive notice that the physical configuration of the

27  facilities including, but not limited to, architectural barriers constituting the Cregor's Mini Mart

28  and/or building(s) was in violation of the civil rights of persons with physical disabilities, such as

1   plaintiff, includes, but is not limited to, coming into contact with public accommodations with
2   accessible elements and facilities since January 26, 1991, communications with invitees and
3   guests, plaintiff  BYRON CHAPMAN himself, possibly sponsors of conferences, owners of other
4   restaurants, hotels, motels and businesses, notices they obtained from governmental agencies upon
5   modification, improvement, or substantial repair of the subject premises and other properties
6   owned by these defendants, newspaper articles and trade publications regarding the Americans
7   with Disabilities Act of 1990 and other access laws, public service announcements by former U.S.
8   Attorney General Janet Reno between 1993 and 2000, and other similar information.  Defendants'
9   failure, under state and federal law, to make the Cregor's Mini Mart accessible is further evidence
10  of defendants' conscious disregard for the rights of plaintiff and other similarly situated persons
11  with disabilities.  Despite being informed of such effect on plaintiff and other persons with
12  physical disabilities due to the lack of accessible facilities, defendants, and each of them,
13  knowingly and willfully refused to take any steps to rectify the situation and to provide full and
14  equal access for plaintiff and other persons with physical disabilities to the Cregor's Mini Mart.
15  Said defendants, and each of them, have continued such practices, in conscious disregard for the
16  rights of plaintiff and other persons with physical disabilities, up to the date of filing of this
17  complaint, and continuing thereon.  Defendants had further actual knowledge of the architectural
18  barriers referred to herein by virtue of the demand letter addressed to the defendants and served
19  concurrently with the summons and complaint.  Said conduct, with knowledge of the effect it was
20  and is having on plaintiff and other persons with physical disabilities, constitutes despicable
21  conduct in conscious disregard of the rights and safety of plaintiff and of other similarly situated
22  persons, justifying the imposition of treble damages per Civil Code §§52 and 54.3.

23       50.     Plaintiff  BYRON CHAPMAN and the disability community, including 4A4U,
24  consisting of persons with disabilities, would, could and will return to the subject public
25  accommodation when it is made accessible to persons with disabilities.
26  ///
27  ///
28  ///

**I.     FIRST CAUSE OF ACTION FOR DENIAL OF ACCESS BY A PUBLIC ACCOMMODATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 (42 U.S.C. §12101, *et seq.*)**
(On behalf of Plaintiff  BYRON CHAPMAN, and Against Defendants Jumping J Investments Inc., d.b.a. Cregor's Mini Mart; Marilyn E. S. Hansen, inclusive)
(42 U.S.C. §12101, *et seq.*)

51.     Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in paragraphs 1 through 50 of this complaint.

52.     Pursuant to law, in 1990, the United States Congress made findings per 42 U.S.C. §12101 regarding persons with physical disabilities, finding that laws were needed to more fully protect:

> some 43 million Americans with one or more physical or mental disabilities; [that] historically society has tended to isolate and segregate individuals with disabilities; [that] such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem; [that] the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals; [and that] the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous.

53.     Congress stated as its purpose in passing the Americans with Disabilities Act of 1990 (42 U.S.C. §12102):

> It is the purpose of this act (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities; (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; (3) to ensure that the Federal government plays a central role in enforcing the standards established in this act on behalf of individuals with disabilities; and (4) to invoke the sweep of Congressional authority, including the power to enforce the 14th Amendment and to regulate commerce, in order to address the major areas of discrimination faced day to day by people with disabilities.

54.     As part of the Americans with Disabilities Act of 1990, Public Law 101-336 (hereinafter the "ADA"), Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (Section 301 42 U.S.C. §12181, *et seq.*).  Among the public accommodations identified for purposes of this title was:

(7)     PUBLIC ACCOMMODATION - The following private entities are considered public accommodations for purposes of this title, if the operations of such entities affect commerce -

(E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;

42 U.S.C. §12181(7)(E)

55.     Pursuant to §302, 42 U.S.C. §12182, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation."

56.     The specific prohibitions against discrimination set forth in §302(b)(2)(a), 42 U.S.C. §12182(b)(2)(a) are:

(I)     the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered;

(ii)     a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;

(iii)     a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden;

(iv)     a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities . . . where such removal is readily achievable; and

(v)     where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages or

COMPLAINT FOR INJUNCTIVE  RELIEF AND DAMAGES

1   accommodations available through alternative methods if such
    methods are readily achievable.

2

3   The acts of defendants set forth herein were a violation of plaintiff's rights under the ADA, Public

4   Law 101-336, and the regulations promulgated thereunder, 28 CFR Part 36, *et seq.* - Effective

5   January 31, 1993, the standards of the ADA were also incorporated into California Civil Code

6   §51, making available the damage remedies incorporated into Civil Code §51 and 52(a) and 54.3.

7   57.   The removal of the barriers complained of by plaintiff as hereinabove alleged were

8   at all times after January 26, 1992 "readily achievable" as to the subject building(s) of Cregor's

9   Mini-Mart pursuant to 42 U.S.C. §12182 (b)(2)(A)(i)-(iv).  On information and belief, if the

10  removal of all the barriers complained of herein together was not "readily achievable," the

11  removal of each individual barrier complained of herein was "readily achievable."  On

12  information and belief, defendants' failure to remove said barriers was likewise due to

13  discriminatory practices, procedures and eligibility criteria, as defined by 42 U.S.C. §12182

14  (b)(2)(A)(i)and (ii).

15  58.   Per 42 U.S.C. §12181 (9), the term "readily achievable" means "easily

16  accomplishable and able to be carried out without much difficulty or expense."  The statute

17  defines relative "expense" in part in relation to the total financial resources of the entities

18  involved.  Plaintiff alleges that properly repairing, modifying, or altering each of the items that

19  plaintiff complains of herein were and are "readily achievable" by the defendants under the

20  standards set forth under §301(9) of the Americans with Disabilities Act.  Furthermore, if it was

21  not "readily achievable" for defendants to remove each of such barriers, defendants have failed to

22  make the required services available through alternative methods which were readily achievable.

23  59.   On information and belief, construction work on, and modifications of, the subject

24  building(s) of Cregor's Mini Mart occurred after the compliance date for the Americans with

25  Disabilities Act, January 26, 1992, independently triggering access requirements under Title III of

26  the ADA.

27  60.   Pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §12188, *et*

28  *seq.*, plaintiff is entitled to the remedies and procedures set forth in §204(a) of the Civil Rights

Act of 1964, 42 U.S.C. 2000(a)-3(a), as plaintiff is being subjected to discrimination on the basis of disability in violation of this title or have reasonable grounds for believing that plaintiff is about to be subjected to discrimination in violation of §302.  Plaintiff is deterred from returning to or making use of the public facilities complained of herein so long as the premises and defendants' policies bar full and equal use by persons with physical disabilities.

61.     42 U.S.C. 12188 (a)(1) states: "Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this title does not intend to comply with its provisions."   Pursuant to this section, plaintiff  BYRON CHAPMAN has not returned to defendants' premises since on or about September 1, 2016, May, 24, 2017 and October 4, 2017 but on information and belief, alleges that defendants have continued to violate the law and deny the rights of plaintiff and of other persons with physical disabilities to access this public accommodation.

62.     Plaintiff seeks relief pursuant to remedies set forth in §204(a) of the Civil Rights Act of 1964 (42 U.S.C. 2000(a)-3(a)), and pursuant to federal regulations adopted to implement the Americans with Disabilities Act of 1990, including but not limited to an order granting injunctive relief and attorneys' fees.  Plaintiff will seek attorneys' fees conditioned upon being deemed to be the prevailing party.

**II.     SECOND CAUSE OF ACTION FOR DENIAL OF FULL AND EQUAL ACCESS IN VIOLATION OF CALIFORNIA CIVIL CODE §§54, 54.1 AND 54.3, ET SEQ.**
(On Behalf of Plaintiff  BYRON CHAPMAN, and Against Defendants Jumping J Investments Inc., d.b.a. Cregor's Mini Mart; Marilyn E. S. Hansen, inclusive)
(California Civil Code §§54, 54.1, 54.3, *et seq.)*

63.     Plaintiff repleads and incorporates by reference as if fully set forth again herein, the allegations contained in paragraphs 1 through 62 of this complaint.

64.     At all times relevant to this action, California Civil Code §54 has provided that persons with physical disabilities are not to be discriminated against because of physical handicap or disability.  This section provides that:

> (a) Individuals with disabilities . . . have the same rights as the general public to full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics, and physicians' offices, and other public places.

65.    California Civil Code §54.1 provides that persons with disabilities shall not be denied full and equal access to places of public accommodation or facilities:

(a)(1) Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, and privileges of all common carriers, airplanes, motor vehicles, railroad trains, motorbuses, streetcars, boats, or any other public conveyances or modes of transportation (whether private, public, franchised, licensed, contracted, or otherwise provided), telephone facilities, adoption agencies, private schools, hotels, lodging places, places of public accommodation, amusement or resort, and other places to which the general public is invited, subject only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons.

Civil Code §54.1(a)(1)

66.    California Civil Code §54.1 further provides that a violation of the Americans with Disabilities Act of 1990 constitutes a violation of section 54.1:

(d) A violation of the right of an individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) also constitutes a violation of this section, and nothing in this section shall be construed to limit the access of any person in violation of that act.

Civil Code §54.1(d)

67.    Plaintiff  BYRON CHAPMAN is a person within the meaning of Civil Code §54.1 whose rights have been infringed upon and violated by the defendants, and each of them, as prescribed by Civil Code §§54 and 54.1.  Each specific architectural barrier which defendants knowingly and willfully fail and refuse to remove constitutes a separate act in violation of Civil Code §§54 and 54.1.  Plaintiff has been and continue to be denied full and equal access to defendants' Cregor's Mini-Mart. As a legal result, plaintiff is entitled to seek damages pursuant to a court or jury determination, in accordance with California Civil Code §54.3(a) for each day on which he visited or have been deterred from visiting the Mini-Mart because of  his knowledge and belief that the Mini-Mart is inaccessible to persons with disabilities. California Civil Code §54.3(a) provides:

Any person or persons, firm or corporation, who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an

individual with a disability under Sections 54, 54.1 and 54.2 is liable for each offense for the actual damages and any amount as may be determined by a jury, or the court sitting without a jury, up to a maximum of three times the amount of actual damages but in no case less than . . .one thousand dollars ($1,000) and . . . attorney's fees as may be determined by the court in addition thereto, suffered by any person denied any of the rights provided in Sections 54, 54.1 and 54.2.
Civil Code §54.3(a)

68.     On or about September 1, 2016, May, 24, 2017 and October 4, 2017, and deterrence occasion(s) plaintiff BYRON CHAPMAN suffered violations of Civil Code §§54 and 54.1 in that plaintiff was denied access to signage, parking, accessible route, entrance and dining and other public facilities as stated herein at the Cregor's Mini-Mart and on the basis that plaintiff BYRON CHAPMAN was a person with physical disabilities.

69.     As a result of the denial of equal access to defendants' facilities due to the acts and omissions of defendants, and each of them, in owning, operating and maintaining these subject public facilities, plaintiff BYRON CHAPMAN suffered violations of plaintiff's civil rights, including, but not limited to rights under Civil Code §§51, 52, 54, 54.1, and 54.3, *et seq*. And, plaintiff BYRON CHAPMAN suffered bodily injury at time(s) stated herein. And/or as a legal result of encountering architectural barriers experienced one or a combination of: difficulty, discomfort and embarrassment.

70.     Further, plaintiff suffered emotional distress, mental distress, mental suffering, mental anguish, which includes, but is not limited to, shame, humiliation, embarrassment, upset, anger, frustration, disappointment and worry, expected and naturally associated with a person with physical disabilities encountering architectural barrier(s) as stated herein and being denied access, all to his damages as prayed hereinafter in an amount within the jurisdiction of this court. No claim is being made for mental and emotional distress over and above that is usually associated with the encountering of architectural barriers and legally resulting in adverse experiences. No expert testimony regarding this usual mental and emotional distress will be presented at trial in support of the claim for damages.

71.     Plaintiff has been damaged by defendants', and each of their, wrongful conduct and seeks the relief that is afforded by Civil Code §§54 and 54.1, 54.3 for violation of plaintiff's rights

as a person or an entity that represents persons with physical disabilities on or about September 1, 2016, May, 24, 2017 and October 4, 2017 *and* deterrence occasion(s), and on a continuing basis since then, including statutory damages, a trebling of all of actual damages, general and special damages available pursuant to §54.3 of the Civil Code according to proof.

72.     As a result of defendants', and each of their, acts and omissions in this regard, plaintiff has been required to incur legal expenses and hire attorneys in order to enforce plaintiff's rights and enforce the provisions of the law protecting access for persons with physical disabilities and prohibiting discrimination against persons with physical disabilities.  Pursuant to the provisions of Civil Code §54.3, plaintiff therefore will seek recovery in this lawsuit for all reasonable attorneys' fees and costs incurred if deemed the prevailing party.  Additionally, plaintiff's lawsuit is intended not only to obtain compensation for damages to plaintiff, but also to compel the defendants to make their facilities accessible to all members of the public with disabilities, justifying public interest attorneys' fees, if deemed the prevailing party, pursuant to the provisions of §1021.5 of the Code of Civil Procedure.

## III.     THIRD CAUSE OF ACTION FOR DENIAL OF ACCESS TO FULL AND EQUAL ACCOMMODATIONS, ADVANTAGES, FACILITIES, PRIVILEGES AND/OR SERVICES IN VIOLATION OF CALIFORNIA CIVIL CODE §51, *ET SEQ.* (THE UNRUH CIVIL RIGHTS ACT)
(On Behalf of Plaintiff  BYRON CHAPMAN, and Against Defendants Jumping J Investments Inc., d.b.a. Cregor's Mini Mart; Marilyn E. S. Hansen, inclusive)
(Civil Code §51, 51.5)

73.     Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in paragraphs 1 through 72 of this complaint.

74.     Defendants' actions and omissions and failure to act as a reasonable and prudent public accommodation in identifying, removing and/or creating architectural barriers, policies, practices and/or procedures violates §51 of the Civil Code, the Unruh Civil Rights Act.  The Unruh Act provides:

> This section shall be known, and may be cited, as the Unruh Civil Rights Act.
>
> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, or **disability** are entitled to the full and equal

accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

This section shall not be construed to confer any right or privilege on a person that is conditioned or limited by law or that is applicable alike to persons of every sex, color, race, religion, ancestry, national origin, or **disability.**

Nothing in this section shall be construed to require any construction, alteration, repair, structural or otherwise, or modification of any sort whatsoever, beyond that construction, alteration, repair, or modification that is otherwise required by other provisions of law, to any new or existing establishment, facility, building, improvement, or any other structure . . . nor shall anything in this section be construed to augment, restrict, or alter in any way the authority of the State Architect to require construction, alteration, repair, or modifications that the State Architect otherwise possesses pursuant to other . . . laws.

A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section.

As the Unruh Act incorporates violations of the Americans with Disabilities Act of 1990, the "intent" of the defendants in not complying with barrier removal is not an issue.  Hence, the failure on the parts of defendants, as reasonable and prudent public accommodations, in acting or failing to act to identify and remove barriers can be construed as a "negligent per se" act of defendants, and each of them.

75.    The acts and omissions of defendants stated herein are discriminatory in nature and in violation of Civil Code §51.5:

No business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, refuse to buy from, sell to, or trade with any person in this state because of the race, creed, religion, color, national origin, sex, or **disability** of the person or of the person's partners, members, stockholders, directors, officers, managers, superintendents, agents, employees, business associates, suppliers, or customers.

As used in this section, "person" includes any person, firm association, organization, partnership, business trust, corporation, limited liability company, or company.

Nothing in this section shall be construed to require any construction, alteration, repair, structural or otherwise, or modification of any sort whatsoever, beyond that construction, alteration, repair or modification that is otherwise required by other provisions of law, to any new or existing establishment, facility,

building, improvement, or any other structure . . . nor shall anything in this section be construed to augment, restrict or alter in any way the authority of the State Architect to require construction, alteration, repair, or modifications that the State Architect otherwise possesses pursuant to other laws.

76.     Defendants' acts and omissions as specified have denied to the plaintiff full and equal accommodations, advantages, facilities, privileges and services in a business establishment, on the basis of physical disability, in violation of Civil Code §§51 and 51.5, the Unruh Civil Rights Act.  Furthermore, pursuant to the 1992 amendment to California Civil Code §51, "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."  Plaintiff accordingly incorporates the entirety of his above cause of action for violation of the Americans with Disabilities Act at ¶51, *et seq*., as if repled herein.

77.     As a result of the denial of equal access to defendants' facilities due to the acts and omissions of defendants, and each of them, in owning, operating and maintaining these subject public facilities, plaintiff  BYRON CHAPMAN suffered violations of plaintiff's civil rights, including, but not limited to rights under Civil Code §§51, 52, 54, 54.1, and 54.3, *et seq*.  And, plaintiff  BYRON CHAPMAN suffered bodily injury at time(s) stated herein.  And/or as a legal result of encountering  architectural barriers experienced one or a combination of: difficulty, discomfort and embarrassment.

78.     Further, plaintiff suffered emotional distress, mental distress, mental suffering, mental anguish, which includes, but is not limited to, shame, humiliation, embarrassment, upset, anger, frustration, disappointment and worry, expectedly and naturally associated with a person with physical disabilities encountering architectural barrier(s) as stated herein and being denied access, all to his/her damages as prayed hereinafter in an amount within the jurisdiction of this court. No claim is being made for mental and emotional distress over and above that is usually associated with the encountering of architectural barriers and legally resulting in adverse experiences.  No expert testimony regarding this usual mental and emotional distress will be presented at trial in support of the claim for damages.

///

79.     Plaintiff is entitled to the rights and remedies of §52(a) of the Civil Code, including trebling of actual damages (defined by §52(h) of the Civil Code to mean "special and general damages"), as well as to reasonable attorneys' fees and costs, as is allowed by statute, according to proof if deemed to be the prevailing party.

**PRAYER:**

Plaintiff prays that this court award damages and provide relief as follows:

**I.      PRAYER FOR FIRST CAUSE OF ACTION FOR DENIAL OF ACCESS BY A PUBLIC ACCOMMODATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT  OF 1990 (42 U.S.C. §1 2101, *et seq.*)**
(On Behalf of Plaintiff BYRON CHAPMAN, and Against Defendants Jumping J Investments Inc., d.b.a. Cregor's Mini Mart; Marilyn E. S. Hansen, inclusive)
(42 U.S.C. §12101, *et seq.*)

1.     For injunctive relief, compelling defendants Jumping J Investments Inc., d.b.a. Cregor's Mini Mart; Marilyn E. S. Hansen, inclusive, to make the Cregor's Mini Mart, located at 611 Spring Street, Paso Robles, California, readily accessible to and usable by individuals with disabilities, per 42 U.S.C §12181, *et seq*., and to make reasonable modifications in policies, practice, eligibility criteria and procedures so as to afford full access to the goods, services, facilities, privileges, advantages and accommodations being offered;

2.     For attorneys' fees, litigation expenses and costs of suit, if plaintiff is deemed the prevailing party; and

3.     For such other and further relief as the court may deem proper.

**II.     PRAYER FOR SECOND CAUSE OF ACTION FOR DENIAL OF FULL AND EQUAL ACCESS IN VIOLATION OF CALIFORNIA CIVIL CODE §§54, 54.1 AND 54.3, *ET SEQ.***
(On Behalf of Plaintiff  BYRON CHAPMAN, and Against Defendants Jumping J Investments Inc., d.b.a. Cregor's Mini Mart; Marilyn E. S. Hansen, inclusive)
(California Civil Code §§54, 54.1, 54.3, *et seq.*)

1.     For injunctive relief, compelling defendants Jumping J Investments Inc., d.b.a. Cregor's Mini Mart; Marilyn E. S. Hansen, inclusive, to make the Cregor's Mini Mart, located at 611 Spring Street, Paso Robles, California, readily accessible to and usable by individuals with disabilities, per state law.

///

2.      Statutory damages as afforded by Civil Code §54.3 for the date of incident and for each occasion on which plaintiff was deterred from returning to the subject public accommodation;

3.      Attorneys' fees pursuant to Civil Code §54.3 and Code of Civil Procedure §1021.5, if plaintiffs are deemed the prevailing party;

4.      Treble damages pursuant to Civil Code §54.3;

5.      General damages according to proof;

6.      For all costs of suit;

7.      Prejudgment interest pursuant to Civil Code §3291; and

8.      Such other and further relief as the court may deem just and proper.

**III.    PRAYER FOR THIRD CAUSE OF ACTION FOR DENIAL OF ACCESS TO FULL AND EQUAL ACCOMMODATIONS, ADVANTAGES, FACILITIES, PRIVILEGES AND/OR SERVICES IN VIOLATION OF CALIFORNIA CIVIL CODE §51, *ET SEQ.* (THE UNRUH CIVIL RIGHTS ACT)**
(On Behalf of Plaintiff  BYRON CHAPMAN, and Against Defendants Jumping J Investments Inc., d.b.a. Cregor's Mini Mart; Marilyn E. S. Hansen, inclusive)
(California Civil Code §§51, 51.5, *et seq.*)

1.      For injunctive relief, compelling defendants Jumping J Investments Inc., d.b.a. Cregor's Mini Mart; Marilyn E. S. Hansen, inclusive, to make the Cregor's Mini Mart, located at 611 Spring Street, Paso Robles, California, readily accessible to and usable by individuals with disabilities, per state law;

2.      All statutory damages as afforded by Civil Code §52(a) for the date of incident and for each occasion on which plaintiff was deterred from returning to the subject public accommodation;

3.      Attorneys' fees pursuant to Civil Code §52(a), if plaintiff is deemed the prevailing party;

4.      General damages according to proof;

5.      Treble damages pursuant to Civil Code §52(a);

6.      For all costs of suit;

7.      Prejudgment interest pursuant to Civil Code §3291; and

8.      Such other and further relief as the court may deem just and proper.

Dated: February 20, 2018                THOMAS E. FRANKOVICH,
                                        *A PROFESSIONAL LAW CORPORATION*


                                        By:  /s/Thomas E. Frankovich
                                              Thomas E. Frankovich
                                        Attorney for Plaintiff  Byron Chapman

### **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury for all claims for which a jury is permitted.


February 20, 2018                       THOMAS E. FRANKOVICH,
                                        *A PROFESSIONAL LAW CORPORATION*


                                        By:  /s/Thomas E. Frankovich
                                              Thomas E. Frankovich
                                        Attorney for Plaintiff  Byron Chapman